UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| CHASITY M. INMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:10-CV-305 |
| ) | (VARLAN/SHIRLEY) |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of the Plaintiff's Motion for Judgment [Doc. 11] and the Defendant's Motion for Summary Judgment [Doc. 13]. The Plaintiff Chasity M. Inman ("Plaintiff") seeks judicial review of the decision by Administrative Law Judge ("ALJ") Joan A. Lawrence to deny her benefits, which was the final decision of the Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On November 15, 2005, the Plaintiff applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") alleging a disability onset date beginning on August 1, 2005. [Tr. 107-16]. On July 25, 2008, the ALJ found that the Plaintiff was not disabled. [Tr. 20-30]. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied the Plaintiff's request for review. [Tr. 1–5].

# I. ALJ FINDINGS

The ALJ made the following findings:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2001.

2. The claimant has not engaged in substantial gainful activity since August 1, 2000, the alleged onset date (20 CFR 404.1520(b), 20 CFR 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following combination of impairments, which considered together, are "severe": affective/mood disorder, personality/conduct disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.925 and 416.1526).

5. The claimant's subjective complaints are not credible to the extent alleged.

6. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: limited, but satisfactory abilities to relate to co-workers; deal with the public; maintain attention/concentration; understand, remember, and carry out detailed instructions; relate predictably in social situations; respond appropriately to changes in the work setting; maintain a regular schedule; work close to others without undue distraction; complete a normal work week; accept instructions/criticism appropriately and would have severe limitations with social interaction and overall ability to adapt. Claimant must also avoid hazards.

7. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

8. The claimant was born on January 12, 1977 and was 23 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CRF 404.1563 and 416.963).

9. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

10. Transferability of job skills is not material to the determination of disability because

> using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 11. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).
>
> 12. The claimant was not under a disability, as defined in the Social Security Act, from August 1, 2000 through the date of this decision. (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 22-29].

## II. DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI if he has financial need and he is aged, blind, or under a disability. See 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). An individual shall be determined to be under a disability only if his physical and/or mental impairments are of such severity that he is not only unable to do his previous work, but also cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

Plaintiff bears the burden of proof at the first four steps. Id. The burden of proof shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III. STANDARD OF REVIEW

In reviewing the Commissioner's determination of whether an individual is disabled, the Court is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence in the record to support the ALJ's findings. Longworth v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004). If the ALJ's findings are supported by substantial evidence

based upon the record as a whole, they are conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 534 (6th Cir. 2001) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). On review, the Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y of Health & Human Serv., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

### IV.  ANALYSIS

The Plaintiff argues that the decision of the ALJ was not based on substantial evidence. Specifically, the Plaintiff argues that the ALJ erred by (A) failing to properly consider and explain the weight given to the opinions of consultative examiner, John E. Porter, M.S., and state agency reviewing psychologist, Larry W. Welch, Ed.D., regarding the Plaintiff's mental limitations, and (B) posing improper hypothetical questions to the Vocational Expert ("VE"). [Doc. 12 at 8-11]. The Commissioner responds that (A) the ALJ properly evaluated the opinions of Mr. Porter and Dr. Welch, and (B) the ALJ posed proper hypothetical questions to the VE. [Doc. 14 at 11-12].

5

## A. The ALJ's Evaluation of the Opinions of Mr. Porter and Dr. Welch

The Plaintiff argues that the ALJ improperly evaluated the opinions of Mr. Porter and Dr. Welch regarding her mental limitations. [Doc. 12 at 7-8]. Specifically, the Plaintiff asserts that if the ALJ had given proper weight to the opinion of Mr. Porter, a finding of disability could have been reached. [Doc. 12 at 8]. In addition, the Plaintiff argues that the ALJ failed to explain her rejection of the opinions of Mr. Porter and Dr. Welch. [Doc. 12 at 9]. The Commissioner responds that the ALJ properly evaluated both the consultative examination report from Mr. Porter as well as the review of the record by Dr. Welch. [Doc. 14 at 11]. In addition, the Commissioner contends that the ALJ clearly rejected Mr. Porter's findings of "marked" limitations by determining that the Plaintiff was restricted by moderate non-exertional limitations. [Doc. 14 at 11].

On May 30, 2006, the Plaintiff was examined by consultative examiner, Mr. Porter. [Tr. 327]. Mr. Porter opined that the Plaintiff's work-related activities were limited as follows: her ability to understand and remember was somewhat limited; her ability to sustain concentration and persistence was moderately to markedly limited; her social interaction was markedly limited; and her overall adaptation was markedly limited. [Tr. 333].

On June 7, 2006, Dr. Welch completed a Psychiatric Review Technique Form ("PRTF") [Tr. 339-52] and a Mental Residual Functional Capacity Assessment ("MRFCA") [Tr. 353-56]. In the PRTF, Dr. Welch opined that the Plaintiff had moderate restrictions in her activities of daily living, and in maintaining concentration, persistence, and pace. [Tr. 349]. Dr. Welch noted Mr. Porter's findings of marked limitations, but found such a rating may predict more limitation that Dr. Welch was willing to find. [Tr. 351]. In addition, Dr. Welch stated that the Plaintiff's "allegations are partially supported in that there is evidence of [treatment] of serious mental condition, however, the

6

degree of limitations supported by evidence in [the] file is no more than moderate." [Tr. 351].

On the MRFCA, Dr. Welch evaluated the Plaintiff's mental residual capacity. Dr. Welch indicated that the Plaintiff was moderately limited in the following areas: understanding and remembering detailed instructions; carrying out detailed instructions; maining attention and concentration for extended periods of time; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; sustaining an ordinary routine without special supervision; working in coordination with or proximity to others without being distracted by them; completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; interacting appropriately with the general public; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintaining social appropriate behavior and adhering to basic standards of cleanliness; and responding appropriately to changes in the work setting. [Tr. 353-54].

Ultimately, Dr. Welch opined that the Plaintiff had the residual functional capacity to understand, remember, and complete detailed tasks on a regular and continual basis with occasional difficulty sustaining her concentration, persistence, and pace; would be capable of interacting with a small group and that she could tolerate occasional or superficial, but not continual, general public interact. [Tr. 355]. In addition, Dr. Welch stated that while he did not anticipate that the Plaintiff would have major problem with supervisors or co-workers, he indicated that she might experience occasional irritability. [Tr. 355]. Dr. Welch also noted that the Plaintiff could adapt to routine, though not frequent or fast-paced change. [Tr. 355]. Finally, Dr. Welch indicated that the Plaintiff

7

would be able to set and carry out most long-range goals with only occasional assistance. [Tr. 355].

Contrary to the Plaintiff's argument, the ALJ thoroughly discussed the opinions of both Mr. Porter and Dr. Welch in her decision. In determining the Plaintiff's RFC, the ALJ was entitled to reject Mr. Porter's findings of "marked" limitations and accept the "moderate" limitations opined by Dr. Welch. See 20 C.F.R. § 404.1527(f)(2)(state agency psychological consultants are "highly qualified" psychologists and "who are also experts in Social Security disability evaluation"). The ALJ indicated such rejection of Mr. Porter's opinion when she accepted Dr. Welch's "moderate" limitations by stating "the [Plaintiff's] allegations are generally supported in that there is evidence of diagnosis of a serious mental condition, however, the degree of limitation supported by the evidence in the file, is no more than moderate." [Tr. 26]; [see Tr. 351 (opinion of Dr. Welch finding that the "degree of limitation supported in the file is no more than moderate.")]. The ALJ's statement was the last sentence of the paragraph describing Dr. Welch's moderate findings, making it clear to the Plaintiff that the ALJ accepted Dr. Welch's moderate limitations over the marked findings of Mr. Porter in determining the Plaintiff's residual functional capacity.

Moreover, despite the Plaintiff's claim that the ALJ did not incorporate any of the limitations of either Mr. Porter or Dr. Welch, the ALJ's residual functional capacity determination included Dr. Welch's moderate non-exertional limitations.[1] While the Plaintiff argues that the ALJ noted only "mild" limitations in her residual functional capacity assessment, the ALJ's use of the term "limited, but somewhat satisfactory" when describing the Plaintiff's non-exertional limitations "is an accepted

---

[1]The Plaintiff does not challenge the ALJ's acceptance of Dr. Welch's moderate limitations over the marked limitations found by Mr. Porter. Instead, the Plaintiff argues that the ALJ failed to properly discuss the limitations found in both opinions or provide any reason for her rejection of both opinions. Therefore, the Court limits its review to the ALJ's treatment of both opinions in her disability determination.

8

definition of the term 'moderate' in the area of mental health." Smith v. Astrue, No. 07-148-GWU, 2008 WL 594466, at *5 (E.D. Ky. Feb. 29, 2008).

In addition, the Plaintiff argues that the ALJ's failure to "give some reason" for discounting the opinions of Mr. Porter and Dr. Welch resulted in error. [Doc. 12 at 11]. The Sixth Circuit Court of Appeals has held that an ALJ must provide only "good reasons" when discounting the medical opinion of *treating* sources. Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 875(6th Cir. 2007). In Smith, the court noted that while 20 C.F.R. § 404.1527(d) recognizes that an ALJ "will evaluate every medical opinion [they] receive," the regulations also recognize "that not all medical sources need to be treated equally" and provide three distinct categories of medical sources: non-examining, nontreating, and treating. Id. Further, the court stated that the reason-giving requirement was a procedural safeguard "ensuring 'that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.'" Id. (quoting 20 C.F.R. § 404.1527(d)(1)). Thus, the court found that the "reasons-giving requirement exists only for" treating sources. Id. at 876.

In this case, the ALJ was not required to give reasons for rejecting the opinion of Mr. Porter as he is classified as a nontreating source under the regulations. 20 C.F.R. §§ 404.1502, 416.902 ("Nontreating source . . . includes an acceptable medical source who is a consultative examiner for us, when the consultative examiner is not your treating source."). However, the ALJ provided some basis for finding that the Plaintiff suffered moderate limitations rather than marked limitations when she stated "the degree of limitation supported by the *evidence in the file*, is no more than moderate." [Tr. 26 (emphasis added)]. While the ALJ was not required to provide reasons for rejecting the opinion of Mr. Porter, she indicated that the evidence of record supported only moderate limitations.

9

Thus, contrary to the Plaintiff's argument, the ALJ provided "some reason" for rejecting the findings of marked limitations.[2] [See Doc. 12 at 11].

Accordingly, the Court finds that the ALJ properly discussed and evaluated the opinions of Mr. Porter and Dr. Welch.

### B. Hypothetical Questions Posed to the VE

The Plaintiff argues that the ALJ failed to pose a proper hypothetical question to the VE. [Doc. 12 at 11]. Specifically, the Plaintiff argues that the ALJ's hypothetical questions failed to include her severe limitation with social interaction and overall ability to relate in her hypothetical question. [Doc. 12 at 12]. Further, the Plaintiff asserts that the hypothetical question did not accurately portray the limitations noted by Mr. Porter and Dr. Welch. [Doc. 12 at 12]. The Commissioner responds that the although the Plaintiff asserts that the ALJ did not pose complete questions to the VE, she has failed to discuss the specific VE testimony in her brief. [Doc. 14 at 13]. Moreover, the Commissioner contends that while the VE testified that the Plaintiff could not work if relying on Mr. Porter's marked limitations, the ALJ found that she could not accept any finding of marked limitations and relied on the moderate findings of Dr. Welch. [Doc. 14 at 13-14].

A vocational expert's testimony can constitute substantial evidence to support such a finding provided the testimony is based on a hypothetical question that accurately portrays the limitations imposed by the claimant's physical and mental impairments. Varley v. Sec'y of Health & Human Servs, 820 F.2d 777, 779 (6th Cir. 1987). Under these circumstances, an ALJ may pose such

---

[2]The Court will not address the Plaintiff's argument that the ALJ failed to provide "some reason" for the rejection of Dr. Welch's opinion as the Court has determined that the ALJ accepted the moderate limitations of Dr. Welch.

hypothetical questions which, in his discretion, include only those limitations that are found to be credible. Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1235 (6th Cir. 1993).

The Court finds the Plaintiff's argument unpersuasive. The ALJ's first hypothetical question incorporated Dr. Welch's moderate non-exertional limitations which, ultimately, became part of the ALJ's ultimate residual functional capacity finding. Specifically, the ALJ asked the VE if the Plaintiff could perform her past work as a waitress despite "*a limited but satisfactory ability*" to: relate to co-workers, dealing with the public, maintain attention and concentration, understand, remember, and carry out detailed instructions, relate predictably in social situations, respond appropriately to changes in the work setting, maintain a regular schedule, work close to others without undue distraction, complete a normal work week and accept instructions and criticisms appropriately. [Tr. 57 (emphasis added)]; see Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 597 (6th Cir. 2005) (holding that the hypothetical question accounted for moderate limitations when the ALJ asked the VE to consider only jobs that plaintiff could perform "despite" *a limited but satisfactory ability* to handle certain non-exertional limitations). The ALJ also indicated that the Plaintiff must avoid hazards. [Tr. 57]. The VE responded that the Plaintiff could not return to her past work, but other jobs were available for a person limited by the above restrictions. [Tr. 57-58].

Contrary to the Plaintiff's argument, the ALJ's second hypothetical incorporated the limitations of the first hypothetical and that the Plaintiff could not deal with "a lot with people and because of her overall difficulty with adapting she needs to be in a job that is fairly routine." [Tr. 58]. The VE responded that such limitations would not impact the Plaintiff's ability to perform medium, unskilled work. [Tr. 58]. While the ALJ did not use the term "severe" when identifying the additional non-exertional limitations in her second hypothetical, she properly identified and

11

addressed such limitations when she stated that the Plaintiff would have difficulty dealing with "a lot with people" and she would have an "overall difficult with adapting [as] she needs to be in a job that is fairly routine." [Tr. 57]. Therefore, the ALJ adequately captured the Plaintiff's moderate limitations, as identified by Dr. Welch and discussed *supra*, in the hypothetical questions she posed to the VE.

In addition, the Plaintiff noted that if the ALJ had properly accepted Mr. Porter's "marked" limitations then the ALJ would have reached the conclusion that the Plaintiff was disabled based on the VE's testimony. The Commissioner asserts that it does not dispute the VE's testimony on this point. The Plaintiff's argument, however, is more accurately directed at the ALJ's conclusions regarding her condition. As discussed *supra*, the ALJ found the moderate non-exertional limitations, such as those opined by Dr. Welch, were more consistent with the evidence of record and incorporated such moderate limitations in the Plaintiff's residual functional capacity assessment.

Accordingly, the Court finds that the ALJ posed proper hypothetical questions to the VE because the ALJ's questions accurately portrayed the limitations imposed by the Plaintiff's mental impairments.

## V.  CONCLUSION

For the foregoing reasons, it is hereby **RECOMMENDED**[3] that Plaintiff's Motion for Summary Judgment **[Doc. 11]** be **DENIED**, and that Commissioner's Motion for Summary Judgment **[Doc. 13]** be **GRANTED**.

Respectfully submitted,

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[3] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 155 (1985) (affirming the Court of Appeals for the Sixth Circuit rule "conditioning appeal, when taken from a district court judgment that adopts a magistrate's recommendation, upon the filing of objections"). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are preserved for appellate review. Smith v. Detroit Fed'n of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).